UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAKOTA RANDOLPH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-0154-CVE-TLW |
| ) | |
| STANLEY GLANZ, in his individual ) | |
| capacity; BOARD OF COUNTY ) | |
| COMMISSIONERS OF TULSA COUNTY; ) | |
| ARMOR CORRECTIONAL HEALTH ) | |
| SERVICES, INC.; VIC REGALADO, in his ) | |
| official capacity as Tulsa County Sheriff, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court are Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss (Dkt. # 16), Motion and Brief to Dismiss Plaintiff's Amended[1] Complaint by Defendant Tulsa County Board of County Commissioners (Dkt. # 20), and Defendants Stanley Glanz in His Individual Capacity and Sheriff Vic Regalado in His Official Capacity's Motion to Dismiss Complaint (Dkt. # 22). Defendant Armor Correctional Health Services, Inc. (Armor) asks the Court to dismiss plaintiff's claims against it for failure to state a claim, arguing that plaintiff's claim under 42 U.S.C. § 1983 has failed to satisfy the federal pleading standards, that Armor is immune from suit under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151-172 (OGTCA), that plaintiff's state law and state constitutional claims are barred by the statute of limitations, and that article II, sections 7 and 9 of the Oklahoma Constitution do not protect pretrial detainees. Dkt. # 16.

---

[1] Plaintiff has filed only one complaint in this case. The Court treats this motion as a motion to dismiss the original complaint (Dkt. # 3).

Defendant Tulsa County Board of County Commissioners (BOCC) asks the Court to dismiss plaintiff's claims against it for failure to state a claim, arguing that it is immune from plaintiff's negligence claim against it, that the BOCC cannot be held liable under respondeat superior for the actions of the Tulsa County Sheriff's Office (TCSO), that plaintiff's claims have failed to satisfy the federal pleading standards, that suit against the BOCC is redundant, and that plaintiff cannot be awarded punitive damages under the OGTCA. Dkt. # 20. Defendants Glanz, individually, and Regalado, in his official capacity, ask the Court to dismiss plaintiff's claims against them for failure to state a claim, arguing that plaintiff's claims have failed to satisfy the federal pleading standards, that Glanz is entitled to qualified immunity, and that plaintiff's state law and state constitutional claims are barred by the statute of limitations. Dkt. # 22. Plaintiff responds that he properly pled his § 1983 claim, that Armor is not immune under the OGTCA, that his claims under state tort law and the state constitution are not time barred, that article II, sections 7 and 9 of the Oklahoma Constitution cover pretrial detainees, that the BOCC can be held liable under respondeat superior for violations of the Oklahoma Constitution, that the BOCC is not a redundant party because it may be the only appropriate defendant for plaintiff's state constitutional claim against the county, that whether BOCC can be held liable for punitive damages is an open question, and that Glanz is not entitled to qualified immunity. Dkt. ## 27, 28, 29. Plaintiff concedes that his negligence claim against the BOCC is barred. Dkt. # 28, at 1.

## I.

This suit arises from plaintiff's detention in the David L. Moss Criminal Justice Center (Jail) in July 2014. Dkt. # 3. Plaintiff asserts that on or about July 3, 3014, he awoke with a swollen left eye that caused pain and vision loss. Id. at 4. Plaintiff asserts that after complaining to TCSO staff,

he was taken to the Jail's medical unit and seen by a nurse employed by Armor. Id. Plaintiff contends that the nurse diagnosed him with pink eye and gave him antibiotic drops. Id. Plaintiff alleges that the swelling, pain, and loss of vision in his eye increased over time, and that he repeatedly complained to TCSO staff and requested to see a doctor. Id. at 5. Plaintiff asserts that on or about July 8, 2014, an Armor physician diagnosed him with a corneal abrasion and gave him more antibiotic eye drops. Id. Plaintiff alleges that another approximately ten days passed, during which the swelling, pain, and vision loss in his eye further increased and he continued to complain to TCSO and Armor staff. Id. at 6. Plaintiff alleges that on July 18, 2014, he was referred to an ophthalmologist, who diagnosed him with acute iridocyclitis, panuveitis, corneal edema, vitritis, and posterior synechiae. Id. at 6-7. Plaintiff alleges that before these events he had 20/20 vision, but he now has 85% blindness in his left eye. Id. at 7.

On March 21, 2016, plaintiff filed a complaint alleging: (1) a negligence claim against BOCC and Armor; (2) a § 1983 claim against Armor, Glanz in his individual capacity, and Michelle Robinette[2] in her official capacity as acting Sheriff of Tulsa County. All defendants have moved to dismiss, arguing that plaintiff has failed to state a claim as to each of his claims. Dkt. ## 16, 20, 22.

**II.**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

---

[2]   Robinette was later replaced by Vic Regalado in this suit after he assumed the position of Tulsa County Sheriff. Dkt. # 17.

(2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

**III.**

The Court first considers plaintiff's claim under 42 U.S.C. § 1983 against Armor, Glanz in his individual capacity, and Regalado in his official capacity. Defendants argue, inter alia, that plaintiff has failed to allege facts sufficient to show that he suffered a violation of a constitutional right. Dkt. # 16, at 4-9; Dkt. # 22, at 9-11. Plaintiff alleges that defendants were deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments. Dkt. # 27, at 4-11; Dkt. # 29, at 4-11.

**A.**

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007).

Deliberate indifference to a prisoner's serious medical needs constitutes a violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). Although the Eighth Amendment's protections do not attach until after an adjudication of guilt, pretrial detainees are protected against medical inattention under the Fourteenth Amendment's guarantee of due process. Garcia v. Salt Lake Cnty., 768 F.2d 303, 307 (10th Cir. 1985); see also Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). Therefore, the deliberate indifference standard is also proper for determining when denial of medical attention violates a pretrial detainee's Fourteenth Amendment right. Garcia, 768 F.2d at 307.

The deliberate indifference test has both an objective and a subjective prong. Mata, 427 F.3d at 751. The objective prong requires that the constitutional deprivation at issue is "sufficiently serious." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A delay in medical attention will only constitute a constitutional harm when the delay results in a substantial harm. Id. (quoting Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001)). The substantial harm requirement may be satisfied by "lifelong handicap, permanent loss, or considerable pain." Id. (quoting Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong requires that the defendant had a "culpable state of mind." Id. "[A] prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting Farmer, 511 U.S. at 837). Intent can be demonstrated by circumstantial evidence, such as the fact that the risk is obvious. Maza, 427 F.3d at 752. In prison medical cases, two types of conduct may constitute deliberate indifference: (1) a medical professional fails to properly treat a serious medical condition; and (2) prison officials prevent an inmate from receiving medical treatment or deny access to a medical professional capable of diagnosing or treating the condition. Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000). However, the subjective prong is not met when a doctor exercises medical judgment absent an extraordinary degree of neglect. Self, 439 F.3d at 1232. Negligence, even negligence rising to the level of medical malpractice, does not rise to the level of a constitutional violation. Id. at 1233. Medical judgment covers such matters as whether to consult a specialist or undertake additional medical testing. Id. at 1232. Thus, for a claim stemming from a failure to provide additional treatment or refer a medical specialist, the need must have been obvious in order to fulfill the intent requirement. Id. The Tenth Circuit has identified three contexts in which a missed diagnosis or delayed referral may be obvious:

> (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral . . . ; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency . . . .

6

Id. "But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted." Id. at 1232-33.

### B.

The Court finds that plaintiff has failed to plead facts sufficient to show that he suffered a constitutional deprivation. Plaintiff alleges that he is 85% blind in his left eye, suffered great pain, and that his symptoms increased over the time he waited to be referred to an ophthalmologist. Dkt. # 3, at 5-7. As plaintiff alleges a permanent loss and considerable pain caused by delay in referral to a medical specialist, his allegations are "sufficiently serious" to satisfy the deliberate indifference objective prong. However, accepting plaintiff's well-pled allegations as true, plaintiff he has failed to state a claim against Armor, Glanz in his individual capacity, or Regalado in his official capacity that would satisfy the subjective prong of the deliberate indifference test.

Plaintiff's claim against defendants for deliberate indifference relies on two delays: the delay in seeing a doctor after being treated by a nurse, and the delay in a doctor referring him to a medical specialist.[3] Absent allegations of actual knowledge, in order for plaintiff to prevail, he must allege that his need to see a doctor or a specialist was obvious. Under the three contexts that constitute obviousness identified in Self, only the first could apply to plaintiff: there was no failure to treat his medical condition because he was promptly seen and treated by a nurse, and no care was denied

---

[3] Plaintiff also argues that he suffered a constitutional harm due to a delay in medical treatment. See, e.g., Dkt. # 27 at 5 ("Armor's failure to treat, delay in treating and mistreatment of that condition resulted in substantial harm."). However, plaintiff's allegations do not demonstrate that there was any delay in treatment. The timeline is not entirely clear, but plaintiff's complaint indicates that he was seen by a nurse either immediately or very soon after first complaining about his eye. See Dkt. # 3, at 4. Therefore, plaintiff's claim must be that his treatment was inadequate. See Self, 439 F.3d 1227 at 1234.

because he was given drops to treat his eye by both the nurse and doctor. See Dkt. # 3, at 4-6. Thus, in order for plaintiff to state a claim that would constitute a constitutional violation, he must allege that a medical professional actually recognized his inability to treat plaintiff due to the seriousness of plaintiff's condition and the medical professional's corresponding lack of expertise and then unnecessarily delayed referral, or that the need for a specialist was obvious. Plaintiff's complaint fails to meet this standard.

According to the complaint, the plaintiff presented with a swollen and painful eye to the nurse who originally treated him, and she diagnosed him with pink eye and treated him with eye drops. Dkt. # 3, at 4. Plaintiff makes a conclusory allegation that the nurse's failure to consult a physician or have a physician see plaintiff constitutes deliberate indifference. Id. at 4-5. But no facts are alleged that support plaintiff's conclusion that it was obvious a doctor should have been consulted, let alone that the nurse actually recognized that plaintiff's condition was beyond her ability to treat and decided not to consult a doctor anyway. Compare Mata, 427 F.3d at 756 (finding a viable claim for deliberate indifference where a nurse knew an inmate was suffering from severe chest pains but refused to assess or diagnose the potential cardiac emergency in violation of prison medical protocols), with id. at 760-61 (finding no evidence for deliberate indifference where a nurse made a good faith effort to diagnose and treat the plaintiff's condition despite failing to diagnose a heart attack). Plaintiff argues that the obviousness of the condition is circumstantial evidence that the nurse was deliberately indifferent in fulfilling her gatekeeper role. Dkt. # 27, at 6. However, a swollen eye is not the type of ailment that often points to a risk of serious harm. See Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent

that delay would exacerbate the prisoner's medical problems." (quoting Grant v. Bernalillo Cnty. Detention Ctr., No. 98-2193, 1999 WL 157415, at *2 (10th Cir. Mar. 23, 1999))). Furthermore, plaintiff has not alleged any facts to support the claim that the nurse acted with a level of care inconsistent with the symptoms presented. Plaintiff points to a recent decision in this District, Birdwell v. Glanz, No. 15-CV-304-TCK-FHM, 2016 WL 2726929 (N.D. Okla. May 6, 2016), to support his argument that he has properly pled a claim of deliberate indifference. Dkt. # 27, at 10. But the comparison to Birdwell is inapt. In Birdwell, the plaintiff was struck with an object near his eye and complained of migraines, loss of vision, swelling, ear and throat pain, and a possible brain hemorrhage. Birdwell, 2016 WL 2726929 at *2. Despite the plaintiff's complaints, prison medical staff treated only the cut, stitching him up and allowing an untrained and unsupervised nurse to remove the stitches days after they should have been taken out. Id. at *5. Here, plaintiff complained of pain, swelling, and loss of vision in his left eye. Dkt. # 3, at 4-6. A nurse and then a doctor treated his left eye for conditions that it was not unreasonable to think plaintiff had based on the symptoms he presented. Id. In Birdwell, the plaintiff presented with symptoms that went far beyond the surface level cut for which he was treated. But here, the level of care was consistent with the symptoms presented.

Plaintiff alleges that about five days passed between his treatment by the nurse and seeing a doctor. Dkt. # 3, at 4-5. The doctor diagnosed plaintiff with a corneal abrasion and gave him more antibiotic eye drops. Id. at 5. Again plaintiff makes conclusory statements that the need for plaintiff to see an ophthalmologist was obvious and that the doctor's failure to refer plaintiff at that time constitutes deliberate indifference. Id. at 6. But the facts plaintiff alleges show that he presented to the doctor with a swollen and painful eye accompanied by some vision loss. Id. at 5. As with the

nurse who first treated him, plaintiff has failed to plead facts to show that the level of care he received was inconsistent with the symptoms he presented or that any of Armor's doctors had any sort of actual knowledge or reckless state of mind that plaintiff needed to see a medical specialist. The fact that the nurse had already given plaintiff antibiotic eye drops and they had not relieved his condition does not amount to an obvious need for a specialist. In Heidtke v. Corrections Corp. of America, 489 F. App'x 275 (10th Cir. Sept. 27, 2012),[4] the plaintiff broke his arm and was taken to the hospital for treatment, but once back in prison he suffered increasing swelling, pain, loss of mobility, tingling, and numbness. Id. at 277-78. The plaintiff complained of his worsening symptoms, but prison medical staff continued to rewrap his arm each time they saw him and failed to order additional testing or send him back to the hospital for seven weeks. Id. The Tenth Circuit held that the subjective prong of the deliberate indifference test was not met because the plaintiff had shown that prison staff had missed a diagnosis, not that they acted with conscious disregard to his medical needs. Id. at 281-82.

Additionally, cases in which the Tenth Circuit has found properly pled a deliberate indifference claim for failing to refer an inmate to a specialist involve much more obvious needs for specialized expertise than plaintiff alleges here. For example, in Oxendine, the Tenth Circuit held that the plaintiff had stated a claim for deliberate indifference when he alleged a doctor working for the prison performed surgery to reattach a severed finger tip and then failed to consult a specialist for weeks after the doctor noted the fingertip had turned black and began to disintegrate. 241 F.3d at 1279. Plaintiff's allegations instead fall under the banner of medical judgment. Armor's medical

---

[4]   This and all other unpublished opinions are not precedential, but they may be cited for their persuasive value.  See Fed. R. App. 32.1; 10th Cir. R. 32.1.

professionals may have misdiagnosed him, but nothing in plaintiff's complaint supports the extraordinary degree of neglect required to sustain a claim of deliberate indifference. See Self, 439 F.3d at 1234 ("[T]he mere possibility that [plaintiff's] symptoms could also point to other conditions . . . is not sufficient to create an inference of deliberate indifference. . . . [M]isdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim."). Moreover, when it became clear that neither treatment that Armor staff administered relieved plaintiff's condition, plaintiff was referred to a specialist. Dkt. # 3, at 6; see also Self, 439 F.3d at 1234 (finding no evidence of deliberate indifference when a doctor initially misdiagnosed an inmate and later ordered additional tests and sent him to the hospital when the inmate did not respond to treatment).

Plaintiff also alleges that the failure of TCSO staff to take plaintiff to get medical attention during (1) the five days between his seeing the nurse and seeing the first doctor and (2) the ten days between seeing the first doctor and the seeing the second doctor, amounted to deliberate indifference. Dkt. # 3, at 5-6. Because plaintiff was treated promptly after first complaining of his condition, to prevail plaintiff must allege that TCSO staff actually knew that plaintiff needed additional medical treatment or that such a need was obvious. Plaintiff makes conclusory statements that his need for immediate medical care was obvious in the days after he was treated by the nurse and the days after he was treated by the first doctor. Id. at 5-6. However, plaintiff alleges no facts to support the claim that his need for additional treatment was obvious or that any TCSO staff knew he needed more treatment. Plaintiff alleges that his eye appeared swollen and that he complained to TCSO staff that he was in pain and lost some of his vision. Id. at 5-6. Plaintiff also asserts that these symptoms worsened over time. Id. Plaintiff's claim is essentially that TCSO staff delayed too

long in taking him to receive additional medical care. However, given the symptoms plaintiff alleges and the relatively few number of days between the three times TCSO staff took plaintiff to receive medical treatment, plaintiff's complaint fails to allege facts that support his claim that it was obvious plaintiff needed additional medical care or that TCSO knew he needed more treatment.

## IV.

Plaintiff's remaining claims arise under state law. Pursuant to 28 U.S.C. § 1367(a), a federal court may exercise supplemental jurisdiction over claims related to the claims over which it has original jurisdiction. A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); see also Gaston v. Ploeger, 297 F. App'x 738, 746 (10th Cir. 2008) (stating that § 1367(c)(3) expressly permits a district court to decline to exercise supplemental jurisdiction over remaining state law claims after granting summary judgment in favor of defendant on federal law claims). This Court does not have original jurisdiction over plaintiffs' negligence or state constitutional claims, because those claims arise under state law, and there is no evidence of diversity jurisdiction. The decision to exercise supplemental jurisdiction is discretionary, but courts should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction." Anglemeyer v. Hamilton Cnty. Hosp., 58 F.3d 533, 541 (10th Cir. 1995) (quoting Thatcher Enters. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)).

The Court finds that the extent of the pretrial proceedings does not outweigh the interests that would be served by having plaintiff's state law claims tried in a state court. Judicial economy would be served by having the Oklahoma courts resolve issues of Oklahoma law. Further, the Tenth Circuit has "repeatedly recognized that this is the preferred practice." Gaston, 297 F. App'x at 786; see also

Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims."); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995) (noting that there are "the best of reasons" for a district court to defer to a state court rather than retaining and disposing of state law claims). The Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.[5]

**IT IS THEREFORE ORDERED** that Defendant Armor Correctional Health Services, Inc.'s Motion to Dismiss (Dkt. # 16) and Defendants Stanley Glanz in His Individual Capacity and Sheriff Vic Regalado in His Official Capacity's Motion to Dismiss Complaint (Dkt. # 22) are **granted in part and moot in part**: they are granted with respect to plaintiff's claims under 42 U.S.C. § 1983; they are moot with respect to plaintiff's claims under Oklahoma state tort law and the Oklahoma Constitution.

**IT IS FURTHER ORDERED** that Motion and Brief to Dismiss Plaintiff's Amended Complaint by Defendant Tulsa County Board of County Commissioners (Dkt. # 20) is **moot**.

**IT IS FURTHER ORDERED** that plaintiff's claims under Oklahoma state tort law and the Oklahoma Constitution are dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that this is a final order terminating this case.

**DATED** this 16th day of September, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] This Court's dismissal of plaintiff's remaining claims does not leave him without a remedy. Although plaintiff failed to state a claim constituting a violation of the United States Constitution, he may be entitled to relief under Oklahoma law, which plaintiff is free to seek from the Oklahoma courts.